UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KAREN PRICE

VERSUS                                        CIVIL ACTION NO._____

ACADIAN AMBULANCE SERVICE, INC.

COMPLAINT AND JURY DEMAND

NOW INTO COURT, through undersigned counsel, comes Karen Price, an individual of the full age of majority residing and domiciled in the state of Missouri, who respectfully represents:

1.   This Court has jurisdiction pursuant to 28 USC 1332 as this is a civil action between citizens of different states where the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

2.   Venue is appropriate under 28 USC 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

3.   Made defendant herein is Acadian Ambulance Service, Inc. ("Acadian"), a Louisiana corporation doing business in this district.

4.   Ms. Price, a woman, was an employee of Acadian for 11 years and six months. She has received positive performance reviews, numerous promotions, significant recognition from her peers, city leaders, and Acadian's clients and customers.

5.   There was a significant management change in Acadian in late 2015 involving the promotion of Joshua Dupuis and Tim Burke. These two individuals consistently harass and discriminate against women based on their sex.

6.   Since the management change, numerous women have left their previous supervisory positions due to harassment from the new management.

7.    Since the targeting of women began, only men have been promoted to replace the women that have stepped down.

8.    Male employees are not harassed by the new managers.

9.    Ms. Price was being paid over a dollar less per hour than her male co-worker Rogers.  Rogers and Ms. Price shared an office and held the same title, but Rogers was promoted over a year after Ms. Price was promoted.  Ms. Price complained about this pay inequity to the Regional Vice President, the successor Regional Vice President, and the Director of Operations, but she never received a pay increase.

10.   Ms. Price never received her performance appraisal and raise for the year 2015.  She was the only supervisor that had not received a raise or appraisal for 2015.

11.   Dupuis made it known in the office that he wanted a female supervisor to quit.  He increased her workload so extremely and unreasonably that she ultimately resigned.  Dupuis laughed and celebrated about it.

12.   In December 2015, Burke asked Ms. Price to move her office.  Ms. Price explained that she needed a  room to store all of the special event supplies and bike team gear and bikes, and her current office had this feature.  Burke told Ms. Price she could remain in her office.

13.   Two weeks later, Dupuis returned from vacation and told Ms. Price she had to move offices.  Ms. Price told Dupuis that she and Burke had discussed the issue already.  Dupuis told her the decision was his to make.

14.   Ms. Price voiced her concerns about the office in which hey were placing her, adjacent to the restroom, in the center of the building in a high traffic area.

15.   The office building has plumbing problems and the vents are also broken.  The smell is unbearable at times, and Ms. Price has been forced to go into the lobby to work and escape

the smell.  Dupuis told Ms. Price that she could not close her office door and that he was moving her office so that he could "keep an eye on her."  Ms. Price's male peer was given a front office with several windows, farther away from distractions and the restroom smell.

16.     Dupuis and Burke made inappropriate comments and told inappropriate jokes in meetings in which Ms. Price was present.  She objected, stating she was not comfortable with the joking.  The joking and comments stopped, but only momentarily, and soon resumed.

17.     In March 2016 Ms. Price's work situation became unbearable.  Dupuis had increased her work load unreasonably and disrespected Ms. Price.  Ms. Price was having severe anxiety and started having chest pains.

18.     Ms. Price called the Employee Assistance Program and was referred to a counselor.  20 minutes after talking with the counselor, which is supposed to be anonymous, Burke sent Ms. Price a text message telling her to be in his office at 7:00 a.m. the next morning.

19.     Present at the meeting were Burke, Director of Operations Porter Taylor, and Ms. Price.  Ms. Price voiced her concerns about the way Dupuis had been treating her, stating she felt harassed, disrespected, and targeted.  Burke told Ms. Price he would question everyone and that their "stories better match."

20.     Ms. Price also complained in the meeting about her work load and her pay being less than her male peer. She brought up her office relocation, but Burke replied, "It's just an office, get over it."

21.     Ms. Price also brought up the fact that Dupuis had assigned her annual ambulance inspections, which is something Ms. Price had never done because it is close to festival season and Ms. Price is responsible for all of the special events, so her peer had always handled inspections.  Taylor stated he agreed and would look into this issue.  Burke and

Taylor said they would schedule a follow up meeting with Ms. Price and Dupuis. That meeting never happened, and Ms. Price was left in charge of inspections.

22.     Several weeks later, Burke called Ms. Price into his office. He said he had spoken with all the other supervisors and they agreed with Dupuis and not Ms. Price. Burks said Ms. Price was not carrying her wright and needed to step up her game. He stated he would replace all 200 employees in the area if necessary, and that no one would get in his way. Ms. Price left this meeting in tears. Later, two supervisors told Ms. Price that they had spoken with Burke before the meeting and had stood up for her and told Burke that Dupuis, not Ms. Price, was the problem.

23.     Dupuis stated several times that was cutting back Ms. Price's overtime. He had one of her co-workers remove hours from her time sheet without her knowledge or consent. Dupuis told Ms. Price that he looked at her W-2 and knows how much she earns and intended to cut it in half. Yet he still requires her to carry the same or a heavier work load.

24.     This year there was only one week between French Quarter Festival and Jazz Fest. Ms. Price told Dupuis she was concerned about her work load and what she needed to get done, which included payroll, Jazz Fest training, standby training meetings at the Superdome, inspection prep, and regular operations. Dupuis instructed Ms. Price to take comp days off and not put the overtime on her time sheet, but every single "comp day" involved Ms. Price working from home completing payroll and Jazz Fest scheduling.

25.     Ms. Price has been on FMLA leave since May 5, 2016, due to Acute Stress Disorder and Post Traumatic Stress Disorder. She is seeing a therapist and has been prescribed medication for severe anxiety. She has trouble sleeping, and these issues have caused her problems at home. She has had two miscarriages and now has serious fertility issues due to excess stress.

26.   On the advice of her doctor, who repeatedly told Ms. Price that continued exposure to the work environment at Acadian would intensify her adverse symptoms and risk long-term serious medical issues, Ms. Price was forced to resign from Acadian.

27.   The defendant's actions are in violation of state and federal laws prohibiting sex discrimination and regulating overtime pay.  Ms. Price has suffered and continues to suffer loss of income and benefits, gender pay discrepancies, medical and pharmacy expenses, extreme emotional distress, mental anguish, anxiety, injury to her reputation, lost wages, and other losses.  Defendant is liable to Ms. Price for these losses.

28.   In addition, the company is liable for liquidated damages and attorney's under the Fair Labor Standards Act as Acadian is a covered employer and Ms. Price was a non-exempt employee. Ms. Price worked in excess of 40 hours per week in one or more weeks and Acadian did not pay her 1.5 times her regular rate of pay for such overtime hours.

29.   Ms. Price has fulfilled the notice requirements of La. R.S. 23:303( C ), and Acadian is liable to her under La. R.S. 23:332.

30.   Ms. Price requests a jury trial.

WHEREFORE, Karen Price prays that after due proceedings are had there be judgment rendered in her favor and against Acadian Ambulance Service, Inc., awarding her all sums to which she is entitled, including attorney fees, interest, costs, and all other legal, general, and equitable relief.

Respectfully Submitted:
**SCOTT D. WILSON**
**A PROFESSIONAL LAW CORPORATION**
533 Europe Street
Baton Rouge, Louisiana 70802
Phone 225-388-9788; Fax 225-344-1200
sdwilsonlaw@aol.com

BY:  s/Scott D. Wilson

**SCOTT D. WILSON**
Louisiana Bar Roll # 19835